IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LESLIE L. SANDER,

    Plaintiff,

v.                                      Civ. No. 10-684-LPS

LIGHT ACTION, INC.,

    Defendant.

Jeffrey K. Martin, Esquire, of MARTIN & ASSOCIATES, P.A., Wilmington, DE.

    Attorney for Plaintiff.

Scott A. Holt, Esquire and Margaret M. DiBianca, Esquire, of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE.

Of Counsel: Jonathan H. Walker, Esquire, of MASON, MASON, WALKER & HEDRICK, P.C., Newport News, VA.

    Attorneys for Defendant.

**MEMORANDUM OPINION**

March 21, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are: (i) Plaintiff's Motion for Partial Summary Judgment for Counts I and II of the Amended Complaint (Docket Item ("D.I.") 45 and, hereinafter, the "Partial Summary Judgment Motion"), filed by plaintiff, Leslie L. Sander ("Plaintiff"); (ii) Defendant's Motion for Summary Judgment (D.I. 47 and, hereinafter, the "Summary Judgment Motion"), filed by defendant Light Action, Inc. ("Light Action" or "Defendant"); and (iii) Plaintiff's Motion for Leave of Court to File a Second Amended Complaint (D.I. 53 and, hereinafter, the "Motion to Amend"). For the reasons discussed below, the Court will (i) deny Plaintiff's Partial Summary Judgment Motion; (ii) grant Defendant's Summary Judgment Motion; and (iii) deny Plaintiff's Motion to Amend.

## BACKGROUND

Plaintiff filed the complaint ("Complaint") in this action on August 12, 2010 against her former employer, Defendant Light Action, a production company. (D.I. 1) Light Action answered the Complaint on September 3, 2010. (D.I. 4) Plaintiff has at all times been represented by counsel in this matter.

Plaintiff alleges non-payment of overtime wages, in violation of the Fair Labor Standards Act (the "FLSA"), as amended, 29 U.S.C. § 201 *et. seq.*, as well as applicable U.S. Department of Labor regulations, including 29 C.F.R. § 541.103 *et. seq.* Specifically, the Complaint alleges that, as a Light Action manager, between May 2007 and May 2010, Plaintiff often worked in excess of forty (40) hours during her normal work week, without being compensated for overtime and work performed during her meals and other mandatory work periods. Plaintiff alleges that she should have been compensated at a rate of one and one-half times her regular rate

1

(i.e., time-and-one-half) for all time worked in excess of forty (40) hours per week during the three year period.

Plaintiff alleges that the deficiencies in her compensation were a product of Defendant's misclassification of her as an "exempt" employee; that is, an employee who does not fall within the overtime requirements of the FLSA and applicable regulations. Plaintiff further contends that Light Action's practices "destroyed any exemption that may have applied to Plaintiff" when Defendant specifically mandated that she abide by certain policies and procedures.[1] (D.I. 1 ¶ 18) In addition to seeking compensation, Plaintiff seeks liquidated damages as well as attorney's fees and costs.

On January 24, 2011, Plaintiff was granted leave to amend her Complaint, and on that day she filed her Amended Complaint. (D.I. 12) Light Action answered the Amended Complaint on February 7, 2011. (D.I. 16)

In the Amended Complaint, Plaintiff alleges that she "recently recognized a retaliatory fact pattern while reviewing her time at Light Action;" she requested the opportunity to

---

[1] 18. Defendant necessarily destroyed any exemption that may have applied to Plaintiff when it specifically required her to adhere to Defendant's policies and procedures as follows:

a. report to work each day no later than 9:00 a.m. with the expectation that Plaintiff would work a *minimum* of nine (9) hours per day, five (5) days per week;

b. work specifically from 9:00 a.m. to 6:00 p.m. each work day; [and]

c. report all hours worked to management.

(D.I. 1 ¶ 18) (emphasis in original)

2

"incorporate this information into the Complaint." (D.I. 7 at 1; *see also* D.I. 12) Thus, the Amended Complaint includes a state law claim of discrimination/retaliation, alleging Defendant "intentionally and maliciously discriminated against her in retaliation for her complaints, in violation of 19 Del. C. § 726." (D.I. 12 ¶ 42; *see also id.* ¶¶ 27-31, Count III) Asserting that Light Action terminated her employment "with discriminatory motive" and only "after she sought legal counsel and began questioning Light Action's exemption policies," Plaintiff contends that Defendant's reasons for termination were purely "pretextual." (D.I. 12 ¶¶ 42-43)

On December 12, 2011, Plaintiff filed her Partial Summary Judgment Motion, seeking summary judgment with respect to her claimed entitlement to overtime compensation. (D.I. 45; *see also* D.I. 46; D.I. 52) Plaintiff asserts that, during her tenure with Light Action from March 1, 2007 to May 26, 2010, she did not receive all of the overtime compensation she had earned as an hourly employee. (*See* D.I. 46 at 1) Plaintiff argues that because Defendant made various deductions from Plaintiff's compensation, Plaintiff must be deemed an "hourly," as opposed to a "salaried," employee. (*Id.* at 2) It follows, according to Plaintiff, that as a non-salaried, hourly employee, she was entitled to be paid overtime, pursuant to the FLSA. Thus, Plaintiff seeks summary judgment on Counts I and II of her Amended Complaint.

At the same time, Light Action filed its Summary Judgment Motion, seeking judgment on all counts, on the grounds that there can be no genuine dispute that Plaintiff was exempt from the overtime requirements of the FLSA. (*See* D.I. 48; D.I. 54) Specifically, Defendant claims: (i) "Plaintiff admits that her position satisfied the primary-duties test of the FLSA;" (ii) "Plaintiff was paid on a salary basis in accordance with the FLSA;" and (iii) "Plaintiff's exempt status could not have been destroyed by virtue of the three policies upon which she relies." (D.I. 48 at

3

2; *see also* D.I. 54 at 1-2) Light Action further contends that Plaintiff's Count III, which "purports to be brought under the Delaware Discrimination in Employment Act ('DDEA'),'" instead "expressly relies on a provision" of Delaware's Persons With Disabilities Employment Protections Act. (D.I. 48 at 1)

Additionally, on January 13, 2012, upon completion of the briefing on the two summary judgment motions, Plaintiff filed a motion for leave to file a second amended complaint.[2] (D.I. 53) In support of her Motion to Amend, Plaintiff explains that, at paragraph 18 of her Amended Complaint, she alleges that Defendant "destroyed any exemption claimed by Defendant pursuant to the [FLSA]." (D.I. 53 ¶ 2) Plaintiff offers that "[w]hen this matter was initially filed and through early discovery, Plaintiff believed that the basis for her overtime claim was that Defendant carefully monitored her work hours and required Plaintiff to track and report her hours worked." (*Id.* ¶ 3)

> As discovery progressed, a new reason for Plaintiff's entitlement to overtime became apparent. Namely, after Defendant produced the requested pay data, analysis of the pay calculations revealed that Defendant was making deductions from her guaranteed $60,000 base. The deductions were not for complete days but for part days.

(*Id.* ¶ 4) Plaintiff explains that "[u]nder the FLSA, employees who may be otherwise exempt but

---

[2]The amendment proposes to add the following "partial-day deduction" allegations:

> While Defendant agreed to pay Plaintiff a base salary of $60,000 (plus additional compensation for shows and overtime to 45 hours), Defendant improperly deducted time and compensation from her base salary when Plaintiff failed to work at least 40 hours per week. Partial-day deductions were made from Plaintiff's base salary.

(D.I. 53 at (proposed) 2d Am. Compl. ¶ 18(d))

4

whose salary is reduced by partial-day deductions lose their exempt status and become non-exempt employees eligible for overtime compensation." (*Id.* ¶ 5)

Plaintiff emphasizes that Defendant would not suffer prejudice from her proposed amendment, in part because "[t]he partial-day deduction has been discussed . . . as the predominant issue in this case since June 2011." (*Id.* ¶ 6; *see also* D.I. 52 ¶¶ 2, 4 (stating while "this issue has been the predominant issue in this case," now "Plaintiff has shifted her focus to the partial-pay deduction"); D.I. 56 ¶ 4 ("[P]artial-day deduction/destruction of the exemption . . . has been the predominant issue in this case since . . . Plaintiff's deposition on June 28, 2011.")) Defendant opposes the proposed second amended complaint as futile and prejudicial to it. (*See generally* D.I. 55)

## LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

5

support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**B. Amendment**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive

6

pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006). Delay alone is an insufficient reason to deny leave to amend, but there are grounds to deny amendment if the delay is coupled with either an unwarranted burden on the court or undue prejudice to the non-moving party (as a result of the amendment). *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

"[P]rejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal quotation marks omitted). To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to "expend significant additional resources to conduct discovery and prepare for trial;" (2) "significantly delay the resolution of the dispute;" or (3) "prevent [a party] from bringing a timely action in another jurisdiction." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *see also Cureton*, 252 F.3d at 273 (explaining party may suffer

7

undue prejudice if proposed amendment causes surprise or results in additional discovery, additional costs, or additional preparation to defend against new facts or theories alleged). "Thus, while bearing in mind the liberal pleading philosophy of the federal rules," it is also true that "substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend." *Cureton*, 252 F.3d at 273.

## DISCUSSION

### A. Summary Judgment

#### 1. Compensation and Exemption

Defendant contends that Plaintiff was a manager of Light Action who was compensated on a salary basis. Thus, Defendant continues, Plaintiff is not entitled to overtime compensation. In Defendant's view, although Plaintiff was paid premium wages for performing work duties at shows in the field ("gigs"), and sometimes was paid in excess of her base salary, these facts do not take her outside the FLSA exemption, nor do they alter the fact that she received a minimum guaranteed salary of $60,000.

Generally, the FLSA requires an employer to compensate certain of its employees "at a rate not less than one and one-half times the regular rate" for each hour worked in excess of forty (40) hours during a work week. 29 U.S.C. § 207(a)(1). However, the FLSA also provides certain exemptions from its overtime requirements, including for individuals who are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

> An individual employed in a 'bona fide administrative capacity' is someone: (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities; (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general

8

> business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

*Swartz v. Windstream Commc'ns, Inc.*, 429 Fed. App'x. 102, 104 (3d Cir. 2011); *see also* 29 C.F.R. § 541.200.

The Court concludes, based on the record provided, that no reasonable factfinder could find that Plaintiff was not exempt under the FLSA as being employed in a bona fide administrative capacity. Plaintiff concedes that her position – Warehouse & Rental Manager – satisfies parts (2) and (3) of the test set forth above; i.e., the "primary duty" components of the test. (*See* D.I. 48, June 28, 2011 Pl. Depo., at A82-A83; D.I. 46 at ¶ 4 ("For the purposes of this Motion, Plaintiff does not dispute that her job duties and responsibilities were consistent with an executive or administrative exemption if she had been paid a salary.")) The issue is whether Plaintiff was also compensated "on a salary or fee basis."

The record demonstrates no genuine issues of material fact as to whether Plaintiff was compensated by Defendant on a "salary basis." An employee is "compensated on a salary basis" if "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602. Here, Plaintiff was paid a guaranteed base salary of $60,000 per year (and she could earn additional compensation). (*See* D.I. 48 at 4; D.I. 48 at A1, 2/12/07 Meeting Notes of Paula DeLuca (referencing three pay components); *id.* at A238-39, Decl. of Scott Humphrey ("Humphrey Decl.") (discussing Plaintiff's base salary); *id.* at A182 (discussion by Ms. DeLuca of Plaintiff's "guaranteed base salary of $60,000 a year with the opportunity to earn more"); *id.* at

9

A183-86 (same); *id.* at A225, Decl. of Paula DeLuca ("DeLuca Decl."), ¶¶ 4, 9 (same))

This, too, is essentially undisputed. In her own briefing in connection with her Partial Summary Judgment Motion, Plaintiff concedes that her compensation was made up of three components: "a mix of base pay of $60,000.00; payment for 25 shows for $9,712.50; and 3 hours of overtime per week for $4,680.00." (D.I. 46 ¶ 2) Other filings, and discovery responses, further demonstrate Plaintiff's acknowledgment of receiving at least a base of $60,000. (D.I. 48 at A75 ("Plaintiff received at least $60,000.00 in a gross amount per year during her tenure with Defendant."); D.I. 46 Ex.1 (Depo. Ex. 7 of Paula DeLuca); D.I. 53 ¶ 4 (discussing "analysis of the pay calculations," including Plaintiff's "guaranteed $60,000 base"))

Plaintiff's contention is that even assuming she was at one point in exempt status, that status was lost by virtue of her being required to work at certain times and report her hours. (*See* Am. Compl. ¶¶ 18-21; *see also* D.I. 50 ¶ 1) The Court, however, agrees with Defendant that Plaintiff's exempt status could not have been destroyed by virtue of the three policies upon which she relies. (*See supra* n.1; *see also* D.I. 48 at 9-11; D.I. 50 ¶¶ 1-2) An employer may require exempt employees to track and report their time, to confirm they have worked the requisite number of hours; an employer may also direct exempt employees to work a particular schedule and/or a minimum number of daily or weekly hours – all without compromising the employees' exempt status. *See, e.g., Guerrero v. J.W. Hutton, Inc.,* 458 F.3d 830, 836 (8th Cir. 2006) ("[T]he regulations do not prohibit employers from requiring employees to work a specific number of hours per week and track their time to ensure they have worked the requisite number

10

of hours.").³  Other regulations pose additional obstacles to Plaintiff's position. *See* 29 C.F.R. §541.604(b) (providing employer may compute exempt employee's earnings "on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned"); 29 C.F.R. § 541.604(a) ("An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis."). There is simply no basis in the record to make any finding other than that Plaintiff was paid a guaranteed base of $60,000 annually.

Although not entirely clear, it appears that Plaintiff also seeks summary judgment – and opposes Defendant being awarded summary judgment – on the theory that her exempt status was lost as a result of partial-day deductions. If so, the record is not sufficient to support a finding for Plaintiff on this theory either. Plaintiff has identified nine weeks (out of 156) in which she claims that improper deductions were made. (D.I. 46 at ¶ 5) Defendant explains in careful detail

---

³*See also, e.g., Whisman v. Ford Motor Co.,* 157 Fed. App'x 792, 795 (6th Cir. 2005) (finding employees were exempt even though employer issued memorandum requiring all salaried employees to swipe identification badges through card reader so their time-sheets could be audited against card reader reports); *Renfro v. Ind. Mich. Power Co.,* 370 F.3d 512, 516 (6th Cir. 2004) (rejecting argument employees were not exempt because they were required to "account for at least 40 hours of work each week," "make up for partial-day absences either by working extra hours or by taking vacation time or paid time off," or because employer exercised "control[] [over] their work schedules and d[id] not permit them to come and go as they please[d]"); *Douglas v. Argo-Tech Corp.,* 113 F.3d 67, 71 (6th Cir. 1997) (rejecting argument that keeping track of time with time clock for record-keeping purposes precluded application of exemption).

11

how the records relied on by Plaintiff do not show any improper deductions, including any deductions that would result in loss of exempt status, being made. (D.I. 50 at 3-9) On this record, the Court does not find any genuine disputes of material fact.

Accordingly, the Court will grant Defendant's Motion for Summary Judgment.

### 2. Retaliation

Defendant is entitled to summary judgment on Plaintiff's claim for retaliation as well. Count III of the Amended Complaint relies on a provision of Delaware's Persons With Disabilities Employment Protections Act. (*See* D.I. 12 ¶ 41) But Plaintiff has not alleged that she is a "person with a disability."[4] (*See* D.I. 48 at 11) To the contrary, she has admitted that she is *not* such a person. (*See* D.I. 46 at A141-B ("Q. . . . You don't have any kind of handicap or disability that prevents you in any way from doing . . . what you every day, major life activities? A. No.")) Plainly, no reasonable factfinder could find for Plaintiff on her state-law retaliation claim.

In her briefing, Plaintiff now asks the Court to read Count III as alleging retaliation due to her FLSA claim, even though it is not pled as such. (D.I. 49 ¶ 2) The Court is unwilling to do so. In any event, the Court agrees with Defendant, who writes:

> Even if the Court were to redraft the claim as one under an entirely different law (federal wage statute instead of state disability statute), *and* did so by adding allegations that directly contradict the otherwise undisputed evidence already in the record (including Plaintiff's own testimony), *and* read Paragraph 42(a) [of the Amended Complaint] as asserting a causal connection *and* a protected activity, Plaintiff's FLSA retaliation claim *still* would fail because she has failed to proffer any evidence for a jury to find that the reason[s] provided by Defendant for terminating Plaintiff were

---

[4]*See* 19 Del. C. § 722(4) (defining "Person with a disability").

12

a mere pretext for unlawful retaliation.

(D.I. 54 at 6) Plaintiff's affidavit, under the circumstances, comes too late to create a genuine dispute of material fact. *See generally Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991) ("When, without a satisfactory explanation, a non-movant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists.").

Accordingly, the Court will grant Defendant summary judgment on Count III.

## B. Amendment

The Court will also deny Plaintiff's Motion to Amend, by which she seeks leave to file a Second Amended Complaint to allege that she lost her exempt status as a result of deductions from her base salary. Although unclear, it seems that the only purpose for seeking amendment is to make clear that Plaintiff is alleging violations of the FLSA. (D.I. 56 at ¶ 3) The Court has read the Amended Complaint as raising such allegations, and has considered the record with respect to such allegations in connection with evaluating the summary judgment motions. Thus, there is no need for a Second Amended Complaint.

In the alternative, to the extent the Second Amended Complaint would add something new to the instant case, the Court denies the request for amendment as an exercise of its discretion. The Court has "considerable discretion" in entertaining such a request; a sufficient ground for denial is present where amendment would result in "substantial or undue prejudice to the non-moving party." *Cureton*, 252 F.3d at 273, 274. This is particularly true in cases where "no 'reasonable explanation' exist[s] to overlook the delay." *See, e.g., id.* at 274.

Here, in addition to discovery and summary judgment already being completed, the

13

parties are within two weeks of the pretrial conference (April 5, 2012) and there are less than six weeks until trial (May 3, 2012). It is too late – and too prejudicial and burdensome to Defendant, as well as disruptive to the Court – to permit amendment at this point. *See generally Carey v. Beans*, 500 F. Supp. 580, 582 (E.D. Pa. 1980), *aff'd* 659 F.2d 1065 (3d Cir. 1981) (table) ("[W]here plaintiff files a motion to amend after defendant has moved for summary judgment the motion to amend will not be granted unless the party seeking amendment can show not only that the proposed amendment has substantial merit, but also come forward with substantial and convincing evidence supporting the newly asserted claim.") (internal citations and quotation marks omitted).

## CONCLUSION

For the reasons set forth above, the Court will (i) deny Plaintiff's Partial Summary Judgment Motion, (ii) grant Defendant's Summary Judgment Motion, and (iii) deny Plaintiff's Motion to Amend. An appropriate Order will be entered.